IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MICHELE COGBURN                                                                                         PLAINTIFF

VERSUS                                                                  CIVIL ACTION NO: 1:06cv425WJG-JMR

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES AND
AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
LOCAL 1045                                                                                            DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion to dismiss [3-1] filed by the Defendants, American Federation of Government Employees [AFGE] and its Local 1045, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). After due consideration of the pleadings, evidence of record, applicable law, and being otherwise advised in the premises, the Court finds as follows.

Statement of Facts

On April 24, 2006, the Plaintiff, Michele Cogburn, filed her Complaint against AFGE and Local 1045, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, [Title VII], arising from the Defendants' alleged discriminatory practices. (Ct. R., Doc. 1.) Particularly, Plaintiff alleges that Defendants subjected her to sexual discrimination, sexual harassment, a hostile work environment and retaliation, stemming from Plaintiff's refusal to engage in a sexual relationship with Union Steward and current President of Local 1045 and Plaintiff's reporting of same. (Ct. R., Doc. 1, ¶¶ 7-10.) Plaintiff filed a Charge of Discrimination

with the Equal Employment Opportunity Commission [EEOC] on or about February 3, 2004, and amended the charge on or about August 23, 2005. (Ct. R., Doc. 1, ¶ 18.) Defendants filed the instant motion to dismiss asserting that this Court lacks subject matter jurisdiction over Plaintiff's causes of action and that Plaintiff fails to state a claim upon which relief can be granted. (Ct. R., Doc. 3.)

## Standard of Review

When considering a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) or for failure to state a claim under 12(b)(6), the court must accept all well-pleaded facts as true and view the facts in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir. 1992); *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1386 (5th Cir. 1991). Dismissal is warranted if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Piotrowski v. City of Houston*, 51 F.3d 512, 514 (5th Cir. 1995) (quoting, *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). In deciding whether dismissal is warranted, the court will not accept conclusory allegations in the complaint as true. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Unlike a motion to dismiss for failure to state a claim, consideration of matters outside the pleadings do not convert a motion to dismiss for lack of subject matter jurisdiction into a motion for summary judgment. *Ronsonet v. Carroll*, 113 F. Supp. 2d 1009, 1017 (S.D. Miss. 2000).

Discussion

Defendants present four grounds on which they base their motion to dismiss: 1) the Court lacks subject matter jurisdiction because Defendants are not entities covered by Title VII; 2) the Court lacks subject matter jurisdiction because Plaintiff's claims are preempted by the Civil Service Reform Act; 3) Plaintiff failed to exhaust administrative remedies relating to claims arising from alleged discrimination in 2005; and 4) Plaintiff failed to state a claim for relief against AFGE. The Court will address each of these assertions.

I.    Title VII and Labor Organizations

Defendants argue that they are not covered by Title VII because they are not labor organizations as that term is defined by Title VII. Defining the term "labor organization," Title VII states:

> The term "labor organization" means a labor organization engaged in an industry affecting commerce, and any agent of such an organization, and includes any organization of any kind, any agency, or employee representation committee, group, association, or plan so engaged in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment, and any conference, general committee, joint or system board, or joint council so engaged which is subordinate to a national or international labor organization.

42 U.S.C. § 2000e(d). Specifically, Defendants assert that they do not represent employees of a "statutory" employer and that they are not engaged in an industry affecting commerce. In support of their contention, Defendants rely primarily on three cases[1]: *Renfro v. Office and Prof'l Employers Int'l Union, Local 277, AFL-CIO*, 545 F.2d 509 (5th Cir. 1977); *Bergeron v.*

---

[1] Defendants cite a fourth case, *Newbold v. United States Postal Serv.*, 614 F.2d 46 (5th Cir. 1980), which the Court does not address. *Newbold* examined 42 U.S.C. § 2000e-16(c), which provides for suit against a federal department or agency, and is not applicable to the present case.

-3-

*Henderson*, 185 F.R.D. 10 (D. Me. 1999); and *Luttrell v. Runyon*, 3 F. Supp. 2d 1181 (D. Kan. 1998).  The Court will examine each of these cases.

Like the present case, the plaintiff in *Renfro* brought suit against her union local for allegedly committing an unlawful employment practice in violation of Title VII, § 2000e-2(c)(2). 545 F.2d at 510.  In examining whether the district court possessed subject matter jurisdiction, the Fifth Circuit began by quoting an abbreviated definition of "labor organization," stating:  "A 'labor organization' is any organization '. . . in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, . . . or other terms or conditions of employment . . . .'" *Renfro* at 510 (quoting 42 U.S.C. § 2000e(d)).  The *Renfro* Court did not analyze the full language of section 2000e(d) or offer an explanation for omitting portions thereof.  Rather, the court continued by focusing on the terms "employee" and "employer" as used in the abbreviated definition of labor organization.  *Id.*

The court noted that Title VII defined an "employee" as "an individual employed by an employer," *Renfro* at 10 (quoting 42 U.S.C. § 2000e(f)), and limited an "employer" to "a person engaged in an industry affecting commerce who has fifteen or more employees." *Id.* (quoting 42 U.S.C. § 2000e(b).  The court observed that plaintiff's employer, with whom the union local dealt, only employed one individual and therefore, did not meet the statutory definition of an employer.  *Id.*  The court then reasoned that "[f]or [the union local] to be a statutory 'labor organization' it must deal with a statutory 'employer'." *Id.*  From this, the court concluded that the union local was not a labor organization as defined by Title VII, thus the district court lacked subject matter jurisdiction.  *Id.*  The *Renfro* Court's emphasis on that portion of section 2000e(d) addressing a labor organization as "any organization . . . in which employees participate and

which exists for the purpose, in whole or in part, of dealing with employers," forced the conclusion reached by the court.

In *Luttrell v. Runyon*, the plaintiff sued the United States Postal Service [USPS], his union and the union local for discrimination in violation of various statutes, including Title VII. *Luttrell*, 3 F. Supp. 2d 1181, 1183-84 (D. Kan. 1998). Evaluating the basis of the plaintiff's Title VII claim against the union, the district court cited an abbreviated definition of "labor organization," stating that "[a] 'labor organization' is generally defined under § 2000e(d) as an organization representing 'employees' against 'employers.'" *Id.* at 1191. The court then noted that Title VII, § 2000e(b), excludes the United States and any corporation owned by the United States from the definition of employer. *Id.* Following this logic, the court concluded that the union was not a labor organization because it only represented employees against the USPS, which, as an entity of the United States, was excluded from the definition of employer. *Id.* As in *Renfro*, the conclusion in *Luttrell* was made possible by the court's reliance on an abbreviated definition of "labor organization."

In *Bergeron v. Henderson*, the plaintiff sued the USPS and her union, among others, alleging sexual discrimination in violation of Title VII. 185 F.R.D. 10 (D. Me. 1999). Relying almost exclusively on *Luttrell*, the district court dismissed the plaintiff's Title VII claims against the union, holding that "labor organizations that represent federal employees against federal employers are excluded from the definition of 'labor organizations' that may be sued under 42 U.S.C. § 2000e-2(c)." *Bergeron* at 15. *Renfro*, *Luttrell* and *Bergeron* clearly support Defendants' argument to dismiss Plaintiff's Title VII claims.

This Court, however, finds the cases discussed above neither binding nor persuasive. None of the cases cited fully analyzes the language of section 2000e(d). The provision reads in pertinent part: "The term 'labor organization' means a labor organization engaged in an industry affecting commerce . . . ***and includes*** any organization of any kind . . . so engaged in which employees participate and which exists for the purpose . . . of dealing with employers." 42 U.S.C. § 2000e(d) (emphasis added). The decisions cited by the Defendants only address the language following the phrase "and includes," yet broader language precedes the relevant phrase.

To this Court's eye, Title VII broadly defines a labor organization as one "engaged in an industry affecting commerce." *Id.* As the plain language indicates, this broad category of organizations includes "any organization of any kind . . . [engaged in an industry affecting commerce] in which employees participate and which exists for the purpose . . . of dealing with employers." *Id.* The Court can find nothing in the statute which would cause the more narrow example of a labor organization to exclude the broader definition preceding it.

At least one commentator would disagree with this Court's assessment and has suggested that the term "includes" could be read to signal an exhaustive list under the interpretive doctrine of *expressio unius est exclusio alterius*[2] – "the expression of one thing implies the exclusion of another," *Thompson v. Goetzmann*, 337 F.3d 489, 499 (5th Cir. 2003). Caren Sencer, Comment, *When a Boss Isn't an Employer: Limitations of Title VII Coverage*, 25 Berkeley J. Emp. & Lab. L. 441, 469-70 (2004). As noted by the United States Supreme Court, however, "the canon *expressio unius est exclusio alterius* does not apply to every statutory listing or grouping; it has

---

[2]There is no indication whether the courts in *Renfro*, *Luttrell* and *Bergeron* relied on the canon of *exressio unius* in reaching their decisions. Regardless, as indicated herein, the Court does not find the doctrine applicable to 42 U.S.C. § 2000e(d).

force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003).

An examination of the statutory language plainly militates against this Court following an exclusive definition of labor organization. Particularly, the statute uses the phrase "and includes," spacious language which indicates an expansive meaning rather than an exclusive one. Examining similar language, the Supreme Court noted that "the expansive phrasing of 'may include' points directly away from . . . exclusive specification." *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 80 (2002). *See Jones v. American Postal Workers Union*, 192 F.3d 417, 426 (4th Cir. 1999) (citing numerous cases which found that the word "including" normally does not introduce an exhaustive list but sets out examples of a general principle).

Further, this Court cannot identify a "series of terms from which an omission bespeaks a negative implication," which is vital to the canon of *expressio unius*. *Chevron*, 536 U.S. at 81. As mentioned previously, section 2000e(d) offers a broad definition of labor organization – "[t]he term 'labor organization' means a labor organization engaged in an industry affecting commerce" - followed by what appears to be an example of what is deemed to be a labor organization – "and includes any organization of any kind . . . so engaged in which employees participate and which exists for the purpose . . . of dealing with employers." *See Jones*, 192 F.3d at 426. The Court cannot conclude that an expansive definition followed by a single, broad example constitute a series of terms necessary to support the application of *expressio unius*. To the contrary, this Court can discern no statutory language suggesting exclusiveness.

Of the many cases reviewed by the Court, the decision by the Fourth Circuit Court of Appeals in *Jones v. American Postal Workers Union*, 192 F.3d 417 (4th Cir. 1999), provides the most well-reasoned and in-depth analysis. In *Jones*, the Fourth Circuit directly addressed the issue whether a labor union that represents federal employees may constitute a labor organization as that term is defined in Title VII. 192 F.3d at 420. The *Jones* Court noted that it "must give effect to the unambiguously expressed intent of Congress," 192 F.3d at 423 (quoting *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843 (1984)), but continued that "[i]n the event the statutory provision or provisions at issue are ambiguous, 'the question then becomes one of whether the interpretation by the agency charged with its administration is a permissible one.'" *Id.* (quoting *Adams v. Dole*, 927 F.2d 771, 774 (4th Cir. 1991)).

The court then quoted sections 2000e(d) and (e), which notes circumstances under which a labor organization shall be deemed to be engaged in an industry affecting commerce. *Id.* Following that, the court noted the definition of "commerce" as "trade, traffic, commerce, transportation, transmission, or communication among the several States; or between a State and any place outside thereof; or within the District of Columbia, or a possession of the United States; or between points in the same State but through a point outside thereof." *Jones* at 424 (quoting 42 U.S.C. § 2000e(g)). Continuing, the court noted that Title VII defines an "industry affecting commerce" as "any activity, business, or industry in commerce or in which a labor dispute would hinder or obstruct commerce or the free flow of commerce and includes . . . any governmental industry, business, or activity." *Id.* (quoting 42 U.S.C. § 2000e(h)).

Preparing to analyze the statutory language, the Fourth Circuit recited its guiding principle that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Jones* at 425-26 (quoting *Robinson v. Shell Oil*, 519 U.S. 337, 341 (1997). Using these points of reference, the court proffered five reasons why section 2000e(d) is ambiguous: (1) Title VII's initial definition of labor organization – "[t]he term 'labor organization' means a labor organization engaged in an industry affecting commerce" – begs the question of the nature of a labor organization; (2) the balance of the definition provides a non-exclusive list of organizations that may constitute a labor organization; (3) Title VII provides a separate section allowing federal employees to sue the United States but does not provide a parallel section addressing labor organizations that represent federal employees; (4) although section 2000e(e) enumerates certain instances in which a labor organization shall be "deemed" to be engaged in an industry affecting commerce, it does not define the term labor organization; and, (5) the legislative history of Title VII is silent concerning whether a labor organization engaged in an industry affecting commerce and that represents federal employees is subject Title VII. *Id.* at 426.

Finding the statutory language ambiguous, the Fourth Circuit examined the position of the EEOC as presented in its *amicus* brief. *Jones* at 427-28. Therein, the EEOC urged the court to find that "*at a minimum*, if a labor organization that represents federal employees exists for the purpose, in whole or in part, of dealing with the United States or an agency thereof concerning grievances, labor disputes, and the like, and is engaged in an "industry affecting commerce" as that term is defined in § 2000e(h), then that labor organization is subject to the proscriptions of

Title VII." *Id.* at 425.  In so arguing the EEOC followed the logic of the Eighth Circuit Court of Appeals in *Jennings v. American Postal Workers Union*, 672 F.2d 712 (8th Cir. 1982).  *Id.*

In *Jennings*, the Eighth Circuit, citing section 2000e-2(c), declared that Title VII "provides a cause of action against labor organizations for unlawful employment practices . . . [,and] [t]he fact that the defendant in this case is a labor organization representing federal employees is not controlling."  672 F.2d at 715.  In addition to *Jennings*, the EEOC noted that its interpretation of the statutory language would fully comport with "Congress' primary purpose in enacting [Title VII] of eradicating targeted employment discrimination."  *Jones* at 425.  Furthermore, the EEOC pointed out that not allowing a federal employee to sue its union "would lead to the anomalous result . . . of nonfederal employees being allowed to sue their employers and labor organizations for violations of Title VII[,] . . . but federal employees only being allowed to sue their employer."  *Id.*

After reviewing the EEOC's position, the court found that the *amicus* brief was not a *post hoc* rationalization advanced to defend past agency action but reflected a "fair and considered judgment" on the statutes at issue.  *Jones* at 427.  Additionally, the court noted that EEOC's position was consistent with the provisions in its Compliance Manual, which expressly agreed with the Eighth Circuit in *Jennings*.  *Id.*  Thus, the Fourth Circuit concluded that the EEOC's interpretation should be afforded full deference under *Chevron U.S.A., Inc. v. Natural Resources*

*Defense Council, Inc.*, 467 U.S. 837, 843 (1984).[3]  *Id.*  Having afforded the EEOC's interpretation full deference, the court concluded that:

> Section 2000e(d) can reasonably be interpreted to mean that, *at a minimum,* if a labor organization representing federal employees exists for the purpose, in whole or in part, of dealing with the United States or an agency thereof concerning grievances, labor disputes, and the like of the federal employees it represents and is engaged in an "industry affecting commerce" as that term is defined in § 2000e(h), then that labor organization is subject to the proscriptions of Title VII . . . . . This interpretation fully comports with Congress' primary purpose in enacting [Title VII] of eradicating certain employment discrimination.  Such an interpretation avoids the anomalous result, surely not intended by Congress, of nonfederal employees being allowed to sue their employer and labor organizations for violations of Title VII . . . , but federal employees only being allowed to sue their employer.

*Id.* at 427-28.

Having deferred to the EEOC's statutory interpretation and having found said interpretation to be based on a permissible construction of the statutes, the Fourth Circuit held that:

> There is no dispute in this case that the Defendants represent federal employees and exist for the purpose in whole or in part of dealing with the Postal Service concerning grievances, labor disputes, and the like.  Furthermore, the Defendants' significant representational activities on behalf of Postal Service employees fully support the conclusion that the Defendants are engaged in activities in commerce.  *See* 42 U.S.C. § 2000e(h).  Accordingly, the Defendants constitute labor organizations for purposes of Title VII liability . . . .

*Jones* at 428.  After thoroughly reviewing the relevant case law, this Court finds the logic enunciated in *Jones* compelling.

---

[3] *Chevron* deference decrees that "an agency's interpretation of a statute with which it has been charged with administering and which has been reduced to a regulation is to be fully accepted by a court as long as Congress has not directly spoken as to the precise question at issue and the interpretation proffered by the agency is a permissible one."  *Jones* at 426-27.  Having found the EEOC interpretation "fair and considered" and in keeping with its prior actions, the *Jones* Court afforded the EEOC's interpretation full deference even though the interpretation had not been reduced to a regulation.  *Id.*

This Court, however, is more inclined to find that the plain meaning of the statute supports the holding that a federal employee may file suit against her union under Title VII. Specifically, the Court thinks that the expansive definition of labor organization contained in section 2000e(d) coupled with the definition of an industry affecting commerce contained in section 2000(e)(h) supports the conclusion reached in *Jones* without finding ambiguity. Indeed, it is this Court's impression that the EEOC's interpretation in *Jones* and the Eighth Circuit's finding in *Jennings* favor a plain reading. Additionally, Congress' intent to eradicate targeted employment discrimination coupled with the Court's mandate to broadly interpret Title VII, *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888, 891 (5th Cir. 1970), supports the plain meaning suggested by this Court.

Yet equally, the Court is mindful that the expansive language itself coupled with the statutory and Congressional silence surrounding the issue at hand suggests ambiguity. The debate between plain meaning and ambiguity is largely academic in the present context because under either the result is the same. Consequently, the Court finds that the Defendants are labor organizations as that term is defined in Title VII, and Defendants' arguments to the contrary are without merit.

II.     <u>Preemption and the Civil Service Reform Act</u>

Defendants contend that Plaintiff's claims are preempted by the Civil Service Reform Act [CSRA], precluding the exercise of jurisdiction by this Court. To bring Plaintiff's claims within the ambit of the CSRA, Defendants attempt to characterize Plaintiff's Complaint as alleging claims for breach of the duty of fair representation and for violating internal union operations. (Ct. R., Doc. 4, pp. 8-11). A review of the Complaint clearly reveals Plaintiff's intent to allege

claims for sexual harassment and retaliation in violation of Title VII, 42 U.S.C. §§ 2000e-2(c)(2) and -3(a).

While it may be that Plaintiff could have pursued a remedy under the CSRA, Defendants fail to present any binding or persuasive authority that the CSRA preempts an individual's right to pursue claims of discrimination under Title VII.  Notably, the CSRA plainly preserves an employees right to seek relief under Title VII against her employer, but Defendants would have this Court presume that the CSRA preempts any Title VII claim against that employees union.  5 U.S.C. § 2302(d).  *See Rollins v. Marsh*, 937 F.2d 134, 140 (5th Cir. 1991).  *See also Hendrix v Snow*, 170 Fed. Appx. 68, 80 (11th Cir. 2006); *Wilson v. Harvey*, 156 Fed. Appx. 55, 57 (10th Cir. 2005).

Defendants have not presented and this Court has not discovered a single case or statute decreeing that a federal employee may not pursue a Title VII claim against her union based upon preemption by the CSRA.  Therefore, the Court finds that Defendants' assertion that the CSRA preempts Plaintiff's Title VII claims is without merit.

III.    Exhaustion of Administrative Remedies

Defendants urge this Court to dismiss Plaintiff's allegations of sexual discrimination occurring in August 2005 for failure to exhaust administrative remedies.  Specifically, Defendants contend that the EEOC did not provide notice to them of the amended complaint encompassing the August 2005 allegations and failed to investigate the allegations.

Under Title VII, an individual bringing suit must follow certain administrative requirements, such as filing a charge with the EEOC, as a precondition to the filing of a lawsuit in district court.  *Taylor v. Books A Million,* 296 F.3d 376, 379 (5th Cir.2002).  Courts have no

jurisdiction to consider Title VII claims where the aggrieved party has not exhausted administrative remedies. *Id.* Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue. *Dao v. Auchan Hypermarket,* 96 F.3d 787, 788-9 (5th Cir.1996).

Defendants contend that they did not receive notice of the additional charges contained in the amended complaint, thus Plaintiff did not exhaust her administrative remedies as to those allegations. While the purpose of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures," the determinative issue is whether the complaint alleges sufficient facts to put the EEOC on notice of the claims. *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th cir. 2004). As noted by the district court in *Brewster v. Shockley*, "the fact that E.E.O.C. fails to give notice of a discriminatory employment charge to defendants, and/or fails to attempt conciliation with the defendants, does not deprive the court of jurisdiction in a suit filed by affected employees." 554 F. Supp. 365, 367 (W.D. Va. 1983) (citing *Russell v. American Tobacco Co.,* 528 F.2d 357 (4th Cir.1975)). *See Dent v. St. Louis-San Francisco Ry. Co.*, 406 F.2d 399, 402-03 (5th Cir. 1969). Consequently, the Court finds that Defendants' contention that Plaintiff failed to exhaust administrative remedies is without merit.

IV.     Failure to State a Claim

AFGE maintains that Plaintiff has failed to state a claim against it upon which relief can be granted. Particularly, AFGE alleges that the Complaint does not identify any unlawful acts perpetrated against Plaintiff by AFGE, its officers or employees. AFGE, however, notes that Plaintiff alleges that the President of Local 1045 acted as the agent of AFGE. Considering the

standard of review related to a motion to dismiss for failure to state a claim and the factual inquiries associated with principles of agency, the Court cannot at this juncture grant AFGE's motion.  *See Berger v. Iron Workers Reinforced Rodmen Local, 201*, 843 F.2d 1395 (D.C. Cir. 1988); *Sinyard v. Foote & Davies Div. of McCall Corp.*, 577 F.2d 943 (5th Cir. 1978); *Maxwell v. Kight*, 974 F. Supp. 899 (E.D. Tex. 1996).  Consequently, the Court finds that AFGE's contention relating to its motion to dismiss for failure to state a claim is without merit.

      For the reasons stated herein, the Court finds that Defendants' motion to dismiss the Complaint should be denied.  It is therefore,

      ORDERED that Defendants' motion to dismiss [3-1] be, and is hereby, denied.  It is further,

      ORDERED that each party shall bear their respective costs in association with this motion.

      SO ORDERED this the 10th day of October, 2006.


                                            *Walter J. Gex III*
                                    UNITED STATES SENIOR DISTRICT JUDGE